**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SEMIR D. SIRAZI, an Illinois resident, | ) | |
| | ) | |
| Plaintiff, | ) | No. |
| | ) | |
| v. | ) | FILED: APRIL 24, 2008 |
| | ) | 08CV2345 EDA |
| PANDA EXPRESS, INC., a California | ) | JUDGE ANDERSEN |
| corporation, PANDA RESTAURANT | ) | MAGISTRATE JUDGE COLE |
| GROUP, INC., f/k/a PANDA MANAGEMENT | ) | |
| COMPANY, INC., a California corporation, | ) | |
| and CITADEL PANDA EXPRESS, INC., | ) | |
| a California corporation, | ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff, Semir D. Sirazi ("Sirazi"), by his undersigned attorneys, for his

Complaint against Defendants Panda Express, Inc., Panda Restaurant Group, Inc. (f/k/a Panda

Management Company, Inc.), and Citadel Panda Express, Inc. (collectively "Panda Express"),

alleges as follows:

**NATURE OF THE ACTION**

1.      This is an action by Sirazi against Panda Express for unjust enrichment, fraud,

civil conspiracy, aiding and abetting a breach of fiduciary duty and for violations of the Illinois

Uniform Fraudulent Transfer Act.  From 1993 to 2006, Panda Express, Antoin ("Tony") Rezko,

and various Rezko-controlled companies owned and operated numerous Panda Express

restaurants in 5 Midwestern states, the majority of which were in the Illinois/Chicagoland area.

In June of 2006, knowing that Tony Rezko was under severe financial and legal distress, and

desperate for funds, Panda Express (among other improper actions) bought out PE Chicago,

LLC's 50% interest in the Rezko-Citadel partnership – the entity that owned and operated the

Panda Express restaurants – at a price many times less than the fair value of that interest. At the time of the purchase, Panda Express knew that Sirazi and others had significant ownership interests in PE Chicago. In fact, Sirazi, at the time of the purchase – through his interest in Rezko Enterprises, LLC – owned a significant majority of PE Chicago. Panda Express, however, fraudulently conspired with Rezko to acquire PE Chicago's entire interest in the Rezko-Citadel partnership without Sirazi's knowledge and at a price far less than the fair value of such interest. As a result of the improper actions of Panda Express, Sirazi has suffered losses in excess of $15 million.

## PARTIES

2.      Plaintiff Semir D. Sirazi is an individual and resident of the State of Illinois.

3.      Defendant Panda Express, Inc. is a California corporation with its principal place of business located in Rosemead, California. Panda Express, Inc. operates fast food restaurants specializing in Chinese cuisine.

4.      Defendant Panda Restaurant Group, Inc. (f/k/a Panda Management Company, Inc.) is a California corporation with its principal place of business located in Rosemead, California. Panda Restaurant Group, Inc. operates fast food restaurants specializing in Chinese cuisine.

5.      Defendant Citadel Panda Express, Inc. is a California corporation with its principal place of business located in Rosemead, California. Citadel Panda Express, Inc. operates fast food restaurants specializing in Chinese cuisine.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332 (a)(1) as this is an action between citizens of different states wherein the amount in

controversy exceeds the sum or value of $75,000 exclusive of interest and costs. This Court has personal jurisdiction over Panda Express due to Panda Express' systematic and continuous business connections and contacts with Illinois.

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 (a)(2) in that a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

## FACTUAL BACKGROUND

8.     On or about June 12, 1993, Panda Express and Rezko Concessions, Inc. ("Concessions"), an Illinois corporation controlled by Tony Rezko, formed the Rezko-Citadel Limited Partnership ("Rezko-Citadel") as an Illinois partnership. The principal activity of Rezko-Citadel was the operation of restaurants specializing in Chinese cuisine under the "Panda Express" name. From 1993 until 1998, Concessions was the general partner of Rezko-Citadel and Panda Express was the limited partner. Rezko-Citadel was Panda Express' first and only licensee to own and operate Panda Express restaurants in the United States. Profits and losses from operations, as well as any distributions, were to be made 50% to Concessions and 50% to Panda Express, unless otherwise agreed to by the partners. A copy of Rezko-Citadel's joint financial statement, which reflects the relationship between the parties described above, is attached hereto as Exhibit 1.

9.     During 1998, the rights and duties of the general partner were transferred from Concessions to PE Chicago, LLC ("PE Chicago"), a Delaware limited liability company and another entity controlled by Tony Rezko. Concessions was a majority owner of and controlled Rezko Enterprises, LLC ("Enterprises"), a Delaware limited liability company controlled by Tony Rezko, and Enterprises in turn wholly owned and controlled PE Chicago. Panda Express

was aware of this corporate and ownership structure. Attached hereto as Exhibit 2 is a copy of the assignment document, which reflects the above-described transfer.

**Sirazi's Ownership and Other Interests in Concessions, Enterprises and PE Chicago**

10.    Sirazi's ownership and interests in Concessions, Enterprises and PE Chicago are the result of two transactions between Sirazi, Tony Rezko, Concessions and Enterprises.

11.    The first transaction occurred on or about August 29, 2000, when Sirazi provided a total of $2.5 million in working capital to Enterprises and Concessions. Specifically, Sirazi (i) loaned Enterprises $2 million; (ii) acquired warrants from Enterprises for $400,000, and (iii) acquired warrants from Concessions for $100,000. Both the Enterprises' and the Concessions' warrants became immediately exercisable upon Enterprises' sale of a significant asset. PE Chicago's subsequent sale of its 50% ownership interest in Rezko-Citadel constituted the sale of a significant asset. See Exs. 3, 4, which are true and correct copies of the warrants agreements for Concessions and Enterprises, respectively.

12.    The second transaction occurred on September 17, 2002, when Tony Rezko procured a $1 million loan facility from Broadway Bank to be used as working capital for Concessions and/or Enterprises. As a condition precedent to Rezko obtaining this loan, Broadway Bank insisted that a creditworthy third party post collateral securing the loan. Sirazi agreed to provide the necessary security in the form of an assignment to Broadway Bank of a certificate of deposit in the amount of $1 million (the "Sirazi Guarantee"). On the same day, Sirazi entered into a separate written agreement with Rezko with regard to Sirazi's guarantee. (The "Rezko Guarantee agreement," a copy of which is attached hereto as Exhibit 5). The Rezko Guarantee Agreement set out a payment schedule whereby Rezko agreed to make certain payments to Sirazi. This agreement also provided that if the Sirazi Guarantee to Broadway Bank

was not released by January 17, 2003, then Enterprises would issue Sirazi a 2% ownership interest in Enterprises.  Thereafter, Enterprises would issue to Sirazi an additional 1% ownership interest in Enterprises for every additional 30-day period the Sirazi Guarantee to Broadway Bank remained in force, subject to a maximum aggregate membership interest of 12%.  The Sirazi Guarantee was never released and thus Sirazi was vested with a 12% ownership interest in Enterprises by November 2003.

13.     Likewise, on or about September 17, 2002, as a further inducement for Sirazi to guarantee the $1 million loan from Broadway Bank, Abdelhamid Chaib, a partner and operating officer of PE Chicago and a 20% owner in Concessions, pledged his entire ownership in Concessions to secure Rezko's performance of his obligations to Broadway Bank with respect to the loan and Rezko's obligations under the Rezko Guarantee Agreement with Sirazi.  A copy of Chaib's pledge agreement is attached hereto as Exhibit 6.

14.     As of June 1, 2006, the date of the sale of PE Chicago's 50% interest in Rezko-Citadel to Panda Express, Enterprises owed Sirazi $18,526,935.26 on the Enterprises' warrants. Because Enterprises could not redeem the warrants for said amount, Sirazi became automatically vested with an approximately 68% ownership interest in Enterprises under the warrants. Similarly, as of June 1, 2006, Concessions owed Sirazi $32,014,544.12 on the Concessions' warrants.  Because Concessions could not redeem the warrants for said amount, Sirazi became automatically vested with an approximately 54% ownership interest in Concessions under the warrants.  Thus, under the August 2000 warrants agreements, Sirazi owned approximately 68% of Enterprises and approximately 54% of Concessions as of the time Panda Express acquired PE Chicago's 50% interest in Rezko-Citadel.

15.     Rezko defaulted on the $1 million loan facility with Broadway Bank and the Rezko Guarantee Agreement he had with Sirazi.  Thereafter, Sirazi brought an action in the Circuit Court of Cook County for declaratory judgment and other relief against Rezko, Concessions, and Enterprises.  On December 18, 2007, Cook County Circuit Court Judge Nancy Arnold entered judgment in favor of Sirazi confirming, among other things, that Sirazi was entitled to a 12% membership interest in Enterprises and directing Concessions to record on its books the conveyance of Chaib's 20 shares of Concessions to Sirazi, which represented a 20% interest in Concessions. (Concessions, in turn, owned approximately 84% of Enterprises).  A copy of Judge Arnold's December 18, 2007 Judgment Order is attached hereto as Exhibit 7.

16.     In summary, as a result of the transactions detailed above, by November 17, 2003, Sirazi owned approximately 29% of Enterprises (the entity that wholly owned PE Chicago).  By June 1, 2006, when Panda Express bought PE Chicago's interest in Rezko-Citadel, due to the interests he received from the Concessions' and Enterprises' warrants, and his prior interests, Sirazi owned approximately 80% of Enterprises on a fully diluted basis and approximately 75% of Concessions on a fully diluted basis.

**The Rezko-Citadel Partnership**

17.     Over the years the Rezko-Citadel partnership thrived and new Panda Express restaurants were opened.  In or about July 2000, an independent auditor, Technomic, Inc. ("Technomic"), was engaged to determine the value of the Panda Express business that Rezko-Citadel held.  Technomic calculated that the current value of Rezko-Citadel as of July 2000 was $42,220,710.  Technomic concluded that by the end of 2001, the Rezko-Citadel partnership would be worth $56,392,170.  As PE Chicago owned a 50% interest in Rezko-Citadel partnership, PE Chicago owned an interest worth $21,110,355 at the time of the audit, and

$28,196,085 by the end of 2001. A copy of Technomic's July 2000 audit is attached hereto as Exhibit 8.

18.     In addition to the independent valuation provided by Technomic, which valued PE Chicago's interest in Rezko-Citadel at $21,110,355 in 2000, Panda Express' own amendment to the partnership agreement put a value on PE Chicago's interest in Rezko-Citadel, in a distressed situation such as a foreclosure, of at least $13,863,050.80 in 2000. Accordingly, on September 26, 2000, the Rezko-Citadel partnership agreement was amended to grant Panda Express with a Put-Call option, which provided in relevant part:

> [U]pon the receipt by [Panda Express] of a notice form (sic) LaSalle Bank National Association, a national banking association ("Lasalle") that it is electing to foreclose, dispose of or take any other action with respect to any liens that it may have on the General Partner's General Partnership Interest in the Partnership, General Partner hereby grants to [Panda Express] the option to purchase the General Partner's entire General Partnership Interest in the Partnership for an amount equal to the sum of (a) Eight Million Dollars ($8,000,000.00) and (b) the then outstanding balance owed by General Partner to PANDA MANAGEMENT COMPANY, INC., a California corporation, under the Secured Promissory Note dated March 30, 1999, and most recently modified by that certain Secured Promissory Note Modification dated as of September 26, 2000.

See Ex. 9, which is a copy of the amendment to the Rezko-Citadel partnership agreement attached hereto. At the time of this amendment, PE Chicago owed Panda Express at least $5,863,050.80 in debt. Thus, as of September 26, 2000, Panda Express valued PE Chicago's interest to be at least $13,863,050.80, which is the $8,000,000 payment plus the retirement of the $5,863,050.80 in debt that was owed to Panda Express.

19.     As early as August 2000, Panda Express was aware that persons other than Tony Rezko had an interest in Enterprises, the entity that wholly owned and controlled Panda Express' partner, PE Chicago. Indeed, Panda Express was copied on or had in its files an August 15, 2000

letter from Jack Lavin (Chief Financial Officer of PE Chicago) to Mr. Gary Segal of Schwartz, Cooper, Greenberger & Kraus, an attorney representing LaSalle Bank in a financing transaction by LaSalle Bank and Rezko and various Rezko-controlled entities. This letter detailed the different members with interests Rezko Enterprises. A copy of Mr. Lavin's August 15, 2000 letter is attached hereto as Exhibit 10.

20. Panda Express was specifically aware of Sirazi's significant interest in Concessions and Enterprises and had a copy of Sirazi's warrants agreements. Under a Loan and Security Agreement, dated September 26, 2000, between various Rezko-controlled entities and LaSalle Bank, among others, specific mention was made of Sirazi's August 29, 2000 loan to, and warrants agreements with Enterprises and Concessions, as these documents were attached to the Loan and Security Agreement as exhibits. A copy of certain excerpts of the September 26, 2000 Loan and Security Agreement is attached hereto as Exhibit 11. Panda had this Loan and Security Agreement, along with all of the relevant exhibits detailing Sirazi's interest in Enterprises and Concessions, in its possession since 2000.

21. On another occasion Panda Express was made aware of others with interests and ownership of Concessions, Enterprises and PE Chicago. On March 29, 2001, LaSalle Bank sent a letter to Messrs. Lavin and Rezko notifying them of an Event of Default under a Loan Agreement that concerned Concessions, Enterprises, PE Chicago, PJ Chicago, East Coast PJ, PJ Canada, PJ Realty, Manufacturers Bank and LaSalle Bank National Association. A copy of the March 29, 2001 letter is attached hereto as Exhibit 12. This letter copied R. Michael Wilkinson, Esq., Panda Express' general counsel and Peggy Cherng, President and Chief Executive Officer of Panda Express, Inc. and, upon information and belief, an officer of the other Panda Express

entities. This letter also copied Sirazi because of the interests he held in Concessions and Enterprises.

22. On June 3, 2001, the Rezko-Citadel partnership agreement was amended to provide for a detailed valuation process by independent third-parties if Panda Express exercised the Put-Call option[1] that it had under the agreement and the parties could not agree on a Fair Market Value as defined in the June 3, 2001 amendment. A copy of the June 3, 2001 amendment is attached hereto as Ex. 13.

23. On or about June 16, 2002, the Rezko-Citadel partnership agreement was amended to appoint Panda Express as the general partner and PE Chicago, LLC as the limited partner. Substantially all of PE Chicago's assets consisted of its 50% interest in the Rezko-Citadel partnership. A copy of the June 16, 2002 amendment is attached hereto as Exhibit 14.

**The "Sale" of PE Chicago's 50% Interest in the Rezko-Citadel Partnership**

24. Around late fall of 2005, it was widely reported that Tony Rezko and his business activities were under investigation by various governmental entities. Indeed, as early as March 2005, it was publicly reported that the City of Chicago's Department of Procurement Services was investigating and intended to shut down the Panda Express restaurants located in O'Hare Airport that the partnership ran. According to Panda Express' and PE Chicago's joint financial statements for Rezko-Citadel, these stores were allegedly owned by Crucial, Inc., a minority owned and operated business with which Rezko-Citadel had an "Operating Agreement" that provided Rezko-Citadel with income. According to these joint financial statements, Crucial, Inc. went out of business in 2005. These restaurants were designated as exclusively for minority-owned businesses and the federal and local authorities believed that the so-called minority

---

[1] This option was separate and apart from the Put-Call option related to a default notice from LaSalle Bank.

representative was merely a front for Tony Rezko. Succinctly put, at this time it was widely known that Rezko was in severe financial distress and had extensive legal troubles.

25. In or around March or April of 2006, Dr. Fortunee Massuda contacted Panda Express and informed Panda Express that she was suing Tony Rezko and the business entities that he controlled for monies owed to her. She inquired whether Panda Express had an interest in buying her stake in Enterprises (and thus PE Chicago). R. Michael Wilkinson, Panda Express' General Counsel, told Dr. Massuda that Panda Express was not interested and that her interest in Enterprises and PE Chicago was worthless.

26. Immediately after more reports surfaced about the investigations surrounding Rezko and his various businesses, and after receiving the communications from Dr. Massuda, Panda Express purchased PE Chicago's interest in the Rezko-Citadel partnership on June 1, 2006. See Ex. 15, which is a copy of the original sale and purchase agreement attached hereto. As the purchase agreement states, Rezko-Citadel was an Illinois limited partnership, owned one half by Panda Express and one half by PE Chicago. On information and belief, Panda Express did not send PE Chicago, or any other affiliated entity or person, a "Put-Call" notice. The purchase agreement was drafted entirely by Panda Express' attorney. Tony Rezko did not have representation with regard to the transaction. Indeed, Tony Rezko's lack of representation was detailed in a paragraph of the purchase and sale agreement. Ex. 15 at ¶ 12. Even though he owned a substantial interest at the time of the transaction – Sirazi's ownership interests were about 80% of Enterprises (on a fully diluted basis) and 75% of Concessions – Sirazi did not receive any notice of the transaction. At no time was Sirazi ever notified of the pending transaction, let alone was he made aware of any of the details of said sale transaction, despite the fact that he owned a controlling interest in PE Chicago, the 50% partner of Rezko-Citadel.

27.     Although Panda Express clearly was aware that other parties – and specifically Sirazi – had significant interests in Enterprises (and thus PE Chicago), at no time did Sirazi or any other party receive any notice about the proposed sale of PE Chicago's interest in Rezko-Citadel to Panda Express.  Upon information and belief, Panda Express and its counsel informed no one, and dealt with no one, other than Tony Rezko regarding the proposed transaction. Indeed, PE Chicago is not even referred to by name in the body of the agreement, even though it is the entity that had a 50% interest in Rezko-Citadel.

28.     In the original agreement of purchase and sale, the purchase price for PE Chicago's interest in Rezko-Citadel was set at $9,764,228.00.  Of this amount, Panda Express wired $3,252,150.00 to Tony Rezko's personal account at Broadway Bank on June 2, 2006.  A copy of the June 2, 2006 wire transfer is attached hereto as Exhibit 16.  A communication discussing this wire was sent from R. Michael Wilkinson, Panda Express' general counsel, to John Theuer, Dan Sheehy and Peggy Cherng, all officers of Panda Express.  This communication instructed:   "DO NOT FUND UNTIL WE HAVE CONFIRMATION THAT REZKO ENTERPRISES, LLC IS QUALIFIED TO DO BUSINESS IN ILLINOIS."   Ex. 17. $4,687,078.00 of the purchase price was held back to repay the debt owed to Panda Express. The remaining $1,825,000 balance was to be paid:

> to REZKO, as directed by Antoin Rezko from time to time, to the extent that MB Financial's security interest in REZKO-CITADEL is less than One Million Eight Hundred Twenty-five Thousand and no/100 Dollars ($1,825,000.00).

Ex. 15 at ¶ 5.  This agreement also allowed Rezko, or any entity he controlled, a limited option to repurchase PE Chicago's interest in Rezko-Citadel for the purchase price, increased by a time-price factor equal to 10% per annum, compounded annually.  This option had to be exercised by

July 31, 2007 and had to be a lump-sum payment to Panda Express. Panda Express also retained the right to accelerate the July 31, 2007 deadline, if:

> PANDA determines, in is (sic) reasonable business discretion, that continuation of the option to July 31, 2007 would restrict or impair PANDA's ability to borrow funds or raise capital or otherwise likely cause PANDA material business problems or cost, the explanation of which would be certified in a writing from the Chief Financial Officer of Panda Restaurant Group, Inc. to Antoin Rezko.

Ex. 15 at ¶ 6.

29.     The original purchase agreement was subsequently amended, however, because Dan Sheehy, a controller for one or more of the Panda Express entities, stated that he had made an error calculating how much Tony Rezko owed Panda Express. According to Mr. Sheehy, Tony Rezko owed Panda Express, $6,010,284 and not $4,687,078. A copy of an email from Mr. Sheehy documenting this fact is attached hereto as Ex. 18. The amended purchase agreement now stated that the total purchase price for PE Chicago's interest in Rezko-Citadel was $10,322,737.00. A copy of the amended purchase and sale agreement is attached hereto as Ex. 19. The amount personally given to Tony Rezko did not change. The amount of debt retired was changed to $6,010,284. <u>Id.</u> Also, the remaining balance was reduced from $1,825,000 to $1,064,167. <u>Id.</u> Apparently Tony Rezko had no objection to this reduction in monies, as Panda Express' counsel stated to Panda Express' CFO in an email: "John, Tony readily agreed to your analysis, even if the approach is slightly different from HL's approach. I'm delighted." <u>See</u> Ex. 20. Panda Express wired $1,064,167 to Enterprises' account at MB Financial on June 20, 2006. <u>See</u> Ex. 21. Money was never transferred to a PE Chicago account, the entity with the actual interest in Rezko-Citadel, with regard to this entire transaction.

30.     On November 2, 2006, after Tony Rezko's indictment by a federal grand jury on various charges, Panda Express sent Mr. Rezko a letter to his home address certifying that Panda Express was accelerating Rezko's option to repurchase PE Chicago's 50% interest in the Rezko-Citadel partnership, and that said option had to be exercised by December 20, 2006.  A copy of this November 2, 2006 letter is attached hereto as Exhibit 22.  Panda Express stated:  "We understand that you will need time to discuss this with your attorneys, and that you may not be in a position to voluntarily relinquish the right to repurchase the 50% limited partnership interest in Rezko-Citadel."  Id.  Again, Sirazi was not informed of this acceleration by Panda Express.  Rezko never exercised PE Chicago's right to repurchase PE Chicago's partnership interest in Rezko-Citadel.

## COUNT I – UNJUST ENRICHMENT

31.     Sirazi reasserts and incorporates by reference the allegations of his Complaint at paragraphs 1 through 30 as if fully set forth herein.

32.     Panda Express took advantage of the circumstances that Tony Rezko was in with regard to his distressed financial situation and extensive legal troubles to purchase PE Chicago's interest in Rezko-Citadel at a price well below its fair value.  Indeed, PE Chicago's interests were not represented by any independent auditor and PE Chicago lacked any legal representation with regard to this complex transaction.  Even though Panda Express knew that others – specifically Sirazi – had significant interests in Enterprises and PE Chicago, Panda Express paid Rezko personally (in a personal account) for the purchase, failed to follow proper corporate practice, and dealt only with Rezko with regard to this transaction, among other improper actions.  By doing so, Panda unjustly deprived and cheated Sirazi out of the true and proper value of his significant interest in PE Chicago's 50% interest in Rezko-Citadel.

33.     Sirazi had and still has a significant interest in Enterprises and PE Chicago and fulfilled any obligation or duty he may have had.

34.     Panda Express unjustly received the benefit of a price well below fair market value to acquire PE Chicago's 50% interest in the Rezko-Citadel partnership.

35.     Panda Express has been unjustly enriched.

36.     It would violate the principles of justice, equity and good conscience for Panda Express to retain this benefit.

37.     To avoid an unjust enrichment, Sirazi should be awarded damages reflecting Panda Express' enrichment, among other relief.   In the alternative, the June 1, 2006 sale transaction should be unwound and PE Chicago should retain its 50% interest in the Rezko-Citadel partnership.

WHEREFORE, Sirazi respectfully requests that the Court enter judgment against Panda Express in an amount to be determined at trial, but not less than $15,000,000.00; or, in the alternative, that the Court unwind the sale of PE Chicago's 50% interest in Rezko-Citadel, as well as award him interest, costs and his attorney fees, and all such other relief as the Court may deem just, equitable, or appropriate under the circumstances.

## COUNT II – FRAUD

38.     Sirazi reasserts and incorporates by reference the allegations of his Complaint at paragraphs 1 through 37 as if fully set forth herein.

39.     Sirazi alleges that Panda Express intentionally defrauded Sirazi, PE Chicago and Enterprises out of the fair market value of PE Chicago's 50% interest in the Rezko-Citadel partnership.

40.     Panda Express specifically was aware of Sirazi's and other third-party interests in Enterprises and PE Chicago.  Panda Express had knowledge that Tony Rezko was being investigated by several different governmental entities, that Rezko was suffering from severe legal and financial distress, and that Rezko was desperate for funds.  Panda Express and Tony Rezko entered into a scheme to defraud Sirazi, PE Chicago and Enterprises and others with interests in PE Chicago and Enterprises.  This scheme entailed Panda Express paying Tony Rezko personally for PE Chicago's 50% interest in Rezko-Citadel, instead of PE Chicago.  In return, Rezko caused PE Chicago to transfer its 50% interest to Panda Express at a price that was well below fair value.

41.     As further examples of Panda Express' fraudulent actions, on June 1, 2006, Panda Express purchased PE Chicago's interest in the Rezko-Citadel partnership at a price well below fair value.  Panda Express paid a portion of the monies from the purchase price directly to Tony Rezko, in his personal account.  No independent party represented PE Chicago's interests in the transaction, and Rezko had no independent representation.

42.     Panda Express falsely and misleadingly represented that the purchase price it offered for PE Chicago's 50% interest in Rezko-Citadel represented a fair value.  A specific example of this misrepresentation is found in the agreement of purchase and sale on June 1, 2006, where Panda Express states, "for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged…"  See Ex. 15.  The transaction was not for fair value, and Panda Express knew that.

43.     Panda Express also made material omissions by failing to inform any of the third-parties (including Sirazi) with interests in PE Chicago and Enterprises, even though Panda Express had specific knowledge these parties' interests.  Panda Express concealed this

transaction from said parties, preventing any sort of independent evaluation of the fair value of PE Chicago's interest in the Rezko-Citadel partnership at the time of the transaction.

44. Panda Express made these materially false and misleading statements and omissions with the intent of concealing its fraudulent actions from Sirazi and others.

45. By making these material false and misleading statements and material omissions, Panda Express acted with reckless indifference and with willful and wanton disregard to PE Chicago's and Enterprises' interests and the parties with interests in PE Chicago and Enterprises, such as Sirazi. Specifically, Panda Express concealed this transaction and colluded with Tony Rezko to accomplish the sale of PE Chicago's interest in Rezko-Citadel at a price well below fair value. An award of exemplary damages based on Panda Express' fraudulent actions is appropriate because the fraud involved the partnership relationship that Panda Express had with PE Chicago and caused Tony Rezko to violate his duties and responsibilities to PE Chicago and Enterprises, and those who had interests in those entities.

46. By making these false and misleading statements and material omissions and concealments, Panda Express intended to cause PE Chicago, through its agent Tony Rezko, to transfer its 50% interest in Rezko-Citadel to Panda Express for a price that was well below fair value.

47. As a direct and proximate result of Panda Express' material omissions, Sirazi has suffered damages in an amount to be determined at trial, but which are not less than $15,000,000.00.

WHEREFORE, Sirazi respectfully requests that the Court enter judgment against Panda Express in an amount to be determined at trial, but not less than $15,000,000.00, as well

as for exemplary damages, as well as interest, costs and attorney fees, and all such other relief as the Court may deem just, equitable, or appropriate under the circumstances.

## COUNT III –CONSPIRACY TO DEFRAUD

48.　　Sirazi reasserts and incorporates by reference the allegations of his Complaint at paragraphs 1 through 47 as if fully set forth herein.

49.　　At a time specifically unknown to Sirazi, but on information and belief around May-June of 2006, Panda Express and Tony Rezko entered into an agreement and conspiracy to defraud PE Chicago and Enterprises, and those with interests in PE Chicago and Enterprises, of the fair value of their interest in the Rezko-Citadel partnership.

50.　　Panda Express and Tony Rezko agreed to perform each of the above-detailed overt acts in furtherance of their agreement and conspiracy to defraud PE Chicago and Enterprises, and those with interests in PE Chicago and Enterprises, including, but not limited to, paying Tony Rezko personally for causing PE Chicago to transfer its interest in the Rezko-Citadel partnership to Panda Express for a price that was well below the fair value of said interest.

51.　　By their agreement and conspiracy, Panda Express and Tony Rezko have unlawfully and fraudulently caused PE Chicago to transfer its 50% interest in the Rezko-Citadel partnership to Panda Express at a price that was well below fair value, to the detriment of PE Chicago and Enterprises and those who have interests in PE Chicago and Enterprises.

52.　　By entering into an agreement and conspiracy to defraud PE Chicago and Enterprises and those with interests in PE Chicago and Enterprises, Panda Express acted with reckless indifference and with willful and wanton disregard to PE Chicago's and Enterprises' interests and the parties with interests in PE Chicago and Enterprises, such as Sirazi.

Specifically, Panda Express concealed this transaction and colluded with Tony Rezko to accomplish the sale of PE Chicago's interest in Rezko-Citadel at a price well below fair value. An award of exemplary damages based on Panda Express' fraudulent conduct is appropriate because the fraud involved the partnership relationship that Panda Express had with PE Chicago and caused Tony Rezko to violate his duties and responsibilities to PE Chicago and Enterprises, and those who had interests in those entities.

53. Each of the schemes and devices of the foregoing paragraphs comprises one or more overt acts by Panda Express and Tony Rezko in the design, pursuit and execution of their conspiracy and agreement to defraud PE Chicago and Enterprises, and those with an interest in PE Chicago and Enterprises, of the fair value of PE Chicago's interest in the Rezko-Citadel partnership.

54. As a direct and proximate result of the agreement and conspiracy between Panda Express and Tony Rezko to defraud PE Chicago and Enterprises and those with interests in PE Chicago and Enterprises, Sirazi has suffered damages in an amount to be determined at trial, but not less than $15,000,000.00.

WHEREFORE, Sirazi respectfully requests that the Court enter judgment against Panda Express in an amount to be determined at trial, but not less than $15,000,000.00, as well as for exemplary damages, interest, costs and attorney fees, and all such other relief as the Court may deem just, equitable, or appropriate under the circumstances.

## COUNT IV – AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY

55. Sirazi reasserts and incorporates by reference the allegations of his Complaint at paragraphs 1 through 54 as if fully set forth herein.

56.     At all times relevant to this Complaint, Tony Rezko was a director and officer of PE Chicago and Enterprises.

57.     As a director and officer of PE Chicago and Enterprises, Tony Rezko owed a fiduciary duty of loyalty to shareholders and creditors of PE Chicago and Enterprises, including Sirazi.

58.     As a director and officer of PE Chicago and Enterprises, Tony Rezko owed a fiduciary duty obligation to act with due care and to deal honestly and fairly with the shareholders and creditors of PE Chicago and Enterprises, including Sirazi.

59.     Tony Rezko breached his fiduciary duties to PE Chicago's and Enterprises' shareholders and creditors, including Sirazi, by allegedly authorizing the transfer of PE Chicago's 50% interest in Rezko-Citadel to Panda Express for a price that was well below fair value and by taking other actions to the benefit of himself and to the prejudice and detriment of the shareholders and creditors of PE Chicago and Enterprises.

60.     Panda Express was aware, or should have been aware, of Tony Rezko's fiduciary duties and obligations to shareholders and creditors of PE Chicago and Enterprises.

61.     Panda Express knowingly participated, assisted in, and benefited from Tony Rezko's breaches of his fiduciary duties.

62.     Sirazi has been damaged as a direct and proximate result of each of Panda Express' aiding and abetting Tony Rezko's breaches of his fiduciary duties.

WHEREFORE, Sirazi respectfully requests that the Court enter judgment against Panda Express in an amount to be determined at trial, but not less than $15,000,000.00, as well as for interest, costs and attorney fees, and all such other relief as the Court may deem just, equitable, or appropriate under the circumstances.

## COUNT V – VIOLATION OF ILLINOIS
## UNIFORM FRAUDULENT TRANSFER ACT – ACTUAL FRAUD

63.     Sirazi reasserts and incorporates by reference the allegations of his Complaint at paragraphs 1 through 62 as if fully set forth herein.

64.     The transfer of PE Chicago's 50% interest in Rezko-Citadel was made with the actual intent to delay, hinder, and/or defraud PE Chicago's and Enterprises' creditors, including Sirazi.

65.     Sirazi brings this claim pursuant to the Illinois Uniform Fraudulent Transfer Act.

66.     At all relevant times, Enterprises (the entity that wholly owned and controlled PE Chicago) was a debtor within the meaning of 740 ILCS 160/2 (c), (f) and (i).

67.     From August 29, 2000 to the time when PE Chicago's interest in Rezko-Citadel was purchased by Panda Express, Sirazi was a "creditor" of Enterprises within the meaning of 740 ILCS 160/2 (c), (d) and (i).

68.     Panda Express' purchase of PE Chicago's 50% interest in the Rezko-Citadel partnership was a transfer within the meaning of 740 ILCS 160/2(l).

69.     In causing Tony Rezko and Enterprises to transfer PE Chicago's interest in the Rezko-Citadel partnership (the only real asset held by PE Chicago), Panda Express acted with actual intent to hinder, delay or defraud creditors of Enterprises and PE Chicago, namely Sirazi, within the meaning of 740 ILCS 160/5(a)(1).

70.     Among other things, the following factors demonstrate Panda Express' fraudulent intent at the time of the transfer of PE Chicago's interest within the meaning of 740 ILCS 160/5:

(a)     Panda Express knew that Tony Rezko was under severe financial distress and was desperate for funds, which allowed Panda Express to induce and cause Rezko (an insider of PE Chicago and Enterprises within the meaning of 740 ILCS 160/2 (g)(D)) to transfer PE Chicago's interest in the Rezko-Citadel partnership to Panda Express for well below its fair market value;

(b)     Panda Express paid Tony Rezko in a personal account instead of paying PE Chicago, the entity that actually owned the 50% interest in the partnership;

(c)     Neither Rezko nor PE Chicago was represented by counsel or any other independent third-party;

(d)     On information and belief, no qualified, independent third-party was retained to provide an estimation of the value of PE Chicago's 50% interest in Rezko-Citadel; and

(e)     Other relevant factors according to proof.

71.     Panda Express received the benefit of the transfer of PE Chicago's 50% interest in Rezko-Citadel in bad faith. In particular, Panda Express knew that it paid well below fair value for PE Chicago's interest in the partnership and that Tony Rezko desperately needed the funds. Panda Express knew that Tony Rezko and his affiliated businesses were continuing to be the subject of civil and criminal investigations by both governmental entities and private parties. Panda Express also knew that creditors, such as Sirazi, had significant claims against Enterprises. Panda Express caused, enticed and induced Rezko and Enterprises to transfer PE Chicago's 50% interest in the Rezko-Citadel partnership to Panda Express with actual intent to hinder, delay, or defraud creditors of Enterprises, such as Sirazi.

72.     PE Chicago did not receive a reasonably equivalent value, within the meaning of 740 ILCS 160/4, in exchange for the transfer of its partnership interest to Panda Express.

WHEREFORE, Sirazi respectfully requests that the Court enter an Order avoiding the transfer of PE Chicago's interest in Rezko-Citadel to Panda Express, award the cash value of

the interest transferred based on its fair value for the benefit of Enterprises' and PE Chicago's creditors, such as Sirazi, and/or any other relief contemplated under 740 ILCS 160/8, and enter judgment against Panda Express, as well as award Sirazi interest, costs and his attorney fees, and all such other relief as the Court may deem just, equitable, or appropriate under the circumstances.

**COUNT VI – VIOLATION OF ILLINOIS**
**UNIFORM FRAUDULENT TRANSFER ACT – CONSTRUCTIVE FRAUD**

73.     Sirazi reasserts and incorporates by reference the allegations of his Complaint at paragraphs 1 through 72 as if fully set forth herein.

74.     Sirazi brings this claim pursuant to the Illinois Uniform Fraudulent Transfer Act.

75.     At all relevant times, Enterprises (the entity that wholly owned and controlled PE Chicago) was a debtor within the meaning of 740 ILCS 160/2 (c), (f) and (i).

76.     From August 29, 2000 to the time when PE Chicago's interest in Rezko-Citadel was purchased by Panda Express, Sirazi was a "creditor" of Enterprises within the meaning of 740 ILCS 160/2 (c), (d) and (i).

77.     Panda Express' purchase of PE Chicago's 50% interest in the Rezko-Citadel partnership was a transfer within the meaning of 740 ILCS 160/2(l).

78.     Panda Express did not provide PE Chicago or Enterprises with a reasonably equivalent value, as defined in 740 ILCS 160/4(a), in exchange for the transfer of PE Chicago's 50% interest in the Rezko-Citadel partnership.

79.     At the time of the transfer, Enterprises was engaged in a business (and/or transactions) for which its remaining assets were unreasonably small in relation to the business (and/or transactions).  In addition, Enterprises intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

WHEREFORE, Sirazi respectfully requests that the Court enter an Order avoiding the transfer of PE Chicago's in Rezko-Citadel to Panda Express, award the cash value of the interest transferred based on its fair value for the benefit of Enterprises' and PE Chicago's creditors, such as Sirazi, and/or any other relief contemplated under 740 ILCS 160/8, and enter judgment against Panda Express, as well as award Sirazi interest, costs and his attorney fees, and all such other relief as the Court may deem just, equitable, or appropriate under the circumstances.

## JURY TRIAL DEMAND

Sirazi hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

SEMIR D. SIRAZI

Dated:  April 24, 2008                    By:        /s/ Robert S. Grabemann
                                                     One of His Attorneys

Robert S. Grabemann
Timothy M. Schaum
DASPIN & AUMENT, LLP
227 West Monroe
Suite 3500
Chicago, Illinois 60606
(312)258-1600