Am

FILED
JUL 28 2010
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SEMIR D. SIRAZI, an Illinois resident, PE CHICAGO, LLC, a Delaware limited liability company,** | ) | |
| **Plaintiff,** | ) | **No. 08 CV 2345** |
| **v.** | ) | |
| **PANDA EXPRESS, INC., a California corporation, PANDA RESTAURANT GROUP, INC., f/k/a PANDA MANAGEMENT COMPANY, INC., a California corporation, CITADEL PANDA EXPRESS, INC., a California corporation, R. MICHAEL WILKINSON, a California resident and citizen, ANDREW CHERNG, a California resident and citizen, and PEGGY CHERNG, a California resident and citizen.** | ) | **Hon. Wayne R. Andersen**<br>**Hon. Magistrate Jeffrey Cole** |
| **Defendants.** | ) | **<u>JURY TRIAL DEMANDED</u>** |

## FIRST AMENDED COMPLAINT

Plaintiffs, Semir D. Sirazi ("Sirazi") and PE Chicago, LLC ("PE Chicago"), by their undersigned attorneys, for their Complaint against Defendants Panda Express, Inc., Panda Restaurant Group, Inc. (f/k/a Panda Management Company, Inc.), Citadel Panda Express, Inc. (collectively "Panda Express"), R. Michael Wilkinson, Andrew Cherng, and Peggy Cherng allege as follows:

## NATURE OF THE ACTION

1. This is an action by Sirazi and PE Chicago against the Defendants for unjust enrichment, fraud, civil conspiracy, breach of fiduciary duty, breach of contract, aiding and abetting a breach of fiduciary duty and for violations of the Illinois Uniform Fraudulent Transfer

Act. From 1993 to 1998, the Rezko-Citadel partnership, which was a joint venture between Panda Express and Rezko Concessions, Inc., owned and operated numerous Panda Express restaurants in 5 Midwestern states. In 1998, PE Chicago took over for Rezko Concessions as the joint-venture's general partner. Starting in about 2001, Panda Express began breaching its contract with, and its fiduciary duties to, its partner PE Chicago by engaging in a number of improper acts, including Panda Express' self-dealing and failing to deal honestly with PE Chicago by not opening up the planned number of stores under the partners' agreement.

In June of 2006, knowing that Tony Rezko, the managing member of Rezko Concessions and PE Chicago, was under severe financial and legal distress, and desperate for funds, Panda Express (among other improper actions) bought out PE Chicago 50% interest in the Rezko-Citadel partnership at a price many times less than the fair value of that interest. At the time of the purchase, Panda Express knew that Sirazi and others had significant ownership interests in PE Chicago. Indeed, Rezko and the Defendants agreed to keep the transaction a secret and to accomplish it in a matter of days so that Sirazi would not exercise warrants that would have increased his ownership of P.E. Chicago from a 29% interest on a fully diluted basis to a 90% interest on a fully diluted basis. Defendants further conspired with Tony Rezko to acquire PE Chicago's entire interest in the Rezko-Citadel partnership and at a price far less than the fair value of such interest, and to funnel the proceeds of the transaction to Rezko personally thereby depriving PE Chicago of the money to which it was rightfully due. As a result of the improper actions of the Defendants, Sirazi and PE Chicago have suffered losses in excess of $40 million.

## PARTIES

2. Plaintiff Semir D. Sirazi is an individual and resident of the State of Illinois.

3. Plaintiff PE Chicago, LLC is a limited liability company organized under the laws of Delaware.

4. Defendant Peggy Cherng is an individual and a resident and citizen of California.

5. Defendant Andrew Cherng is an individual and a resident and citizen of California.

6. Defendant R. Michael Wilkinson is an individual and a resident and citizen of California.

7. Defendant Panda Express, Inc. is a California corporation with its principal place of business located in Rosemead, California. Panda Express, Inc. operates fast food restaurants specializing in Chinese cuisine.

8. Defendant Panda Restaurant Group, Inc. (f/k/a Panda Management Company, Inc.) is a California corporation with its principal place of business located in Rosemead, California. Panda Restaurant Group, Inc. operates fast food restaurants specializing in Chinese cuisine.

9. Defendant Citadel Panda Express, Inc. is a California corporation with its principal place of business located in Rosemead, California. Citadel Panda Express, Inc. operates fast food restaurants specializing in Chinese cuisine.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332 (a)(1) as this is an action between citizens of different states wherein the amount in controversy exceeds the sum or value of $75,000 exclusive of interest and costs. This Court has personal jurisdiction over Panda Express due to Panda Express' systematic and continuous business connections and contacts with Illinois.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 (a)(2) in that a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

## FACTUAL BACKGROUND

12. On or about June 12, 1993, Panda Express and Rezko Concessions, Inc. ("Concessions"), an Illinois corporation controlled by Tony Rezko, formed the Rezko-Citadel Limited Partnership ("Rezko-Citadel") as an Illinois partnership. The principal activity of Rezko-Citadel was the operation of restaurants specializing in Chinese cuisine under the "Panda Express" name. From 1993 until 1998, Concessions was the general partner of Rezko-Citadel and Panda Express was the limited partner. Rezko-Citadel was Panda Express' first and only licensee to own and operate Panda Express restaurants in the United States. Profits and losses from operations, as well as any distributions, were to be made 50% to Concessions and 50% to Panda Express, unless otherwise agreed to by the partners. A copy of Rezko-Citadel's joint financial statement, which reflects the relationship between the parties described above, is attached hereto as Exhibit 1.

13. During 1998, the rights and duties of the general partner were transferred from Concessions to PE Chicago. Concessions was a majority owner of and controlled Rezko Enterprises, LLC ("Enterprises"), a Delaware limited liability company controlled by Tony Rezko, and Enterprises in turn wholly owned and controlled PE Chicago. Panda Express was aware of this corporate and ownership structure. Attached hereto as Exhibit 2 is a copy of the assignment document, which reflects the above-described transfer.

**<u>Sirazi's Ownership and Other Interests in Concessions, Enterprises and PE Chicago</u>**

14. Sirazi's ownership and interests in Concessions, Enterprises and PE Chicago are the result of two transactions between Sirazi, Tony Rezko, Concessions and Enterprises.

15. The first transaction occurred on or about August 29, 2000, when Sirazi provided a total of $2.5 million in working capital to Enterprises and Concessions. Specifically, Sirazi (i) loaned Enterprises $2 million; (ii) acquired warrants from Enterprises for $400,000, and (iii) acquired warrants from Concessions for $100,000. Both the Enterprises' and the Concessions' warrants became immediately exercisable upon Enterprises' sale of a significant asset. PE Chicago's subsequent sale of its 50% ownership interest in Rezko-Citadel constituted the sale of a significant asset. <u>See</u> Exs. 3, 4, which are true and correct copies of the warrants agreements for Concessions and Enterprises, respectively.

16. The second transaction occurred on September 17, 2002, when Tony Rezko procured a $1 million loan facility from Broadway Bank to be used as working capital for Concessions and/or Enterprises. As a condition precedent to Rezko obtaining this loan, Broadway Bank insisted that a creditworthy third party post collateral securing the loan. Sirazi agreed to provide the necessary security in the form of an assignment to Broadway Bank of a certificate of deposit in the amount of $1 million (the "Sirazi Guarantee"). On the same day, Sirazi entered into a separate written agreement with Rezko with regard to Sirazi's guarantee. (The "Rezko Guarantee agreement," a copy of which is attached hereto as Exhibit 5). The Rezko Guarantee Agreement set out a payment schedule whereby Rezko agreed to make certain payments to Sirazi. This agreement also provided that if the Sirazi Guarantee to Broadway Bank was not released by January 17, 2003, then Enterprises would issue Sirazi a 2% ownership interest in Enterprises. Thereafter, Enterprises would issue to Sirazi an additional 1% ownership

interest in Enterprises for every additional 30-day period the Sirazi Guarantee to Broadway Bank remained in force, subject to a maximum aggregate membership interest of 12%. The Sirazi Guarantee was never released and thus Sirazi was vested with a 12% ownership interest in Enterprises by November 2003.

17. In June 2002, Abdelahmid Chaib ("Chaib") became an employee and officer of Panda Express. On or about September 17, 2002, as a further inducement for Sirazi to guarantee the $1 million loan from Broadway Bank, Chaib, who, in addition to being an employee, officer and agent of Panda Express, was also a partner and operating officer of PE Chicago and a 20% owner in Concessions, pledged his entire ownership in Concessions to secure Rezko's performance of his obligations to Broadway Bank with respect to the loan and Rezko's obligations under the Rezko Guarantee Agreement with Sirazi. A copy of Chaib's pledge agreement is attached hereto as Exhibit 6.

18. As of June 1, 2006, the date of the sale of PE Chicago's 50% interest in Rezko-Citadel to Panda Express, Enterprises owed Sirazi $18,526,935.26 on the Enterprises' warrants. Because Enterprises could not redeem the warrants for said amount, but for the Defendants' fraud and conspiracy, Sirazi would have become automatically vested with a 68% ownership interest in Enterprises on a fully diluted basis under the warrants. Similarly, as of June 1, 2006, Concessions owed Sirazi $32,014,544.12 on the Concessions' warrants. Because Concessions could not redeem the warrants for said amount, but for the Defendants' fraud and conspiracy, Sirazi would have become automatically vested with an approximately 54% ownership interest in Concessions on a fully diluted basis under the warrants. Thus, under the August 2000 warrants agreements, Sirazi had ownership interests of approximately 68% of Enterprises on a

fully diluted basis and approximately 54% of Concessions on a fully diluted basis as of the time Panda Express acquired PE Chicago's 50% interest in Rezko-Citadel.

19. Rezko defaulted on the $1 million loan facility with Broadway Bank and the Rezko Guarantee Agreement he had with Sirazi. Thereafter, Sirazi brought an action in the Circuit Court of Cook County for declaratory judgment and other relief against Rezko, Concessions, and Enterprises. On December 18, 2007, Cook County Circuit Court Judge Nancy Arnold entered judgment in favor of Sirazi confirming, among other things, that Sirazi was entitled to a 12% membership interest in Enterprises and directing Concessions to record on its books the conveyance of Chaib's 20 shares of Concessions to Sirazi, which represented a 20% interest in Concessions. (Concessions, in turn, owned approximately 84% of Enterprises). A copy of Judge Arnold's December 18, 2007 Judgment Order is attached hereto as Exhibit 7.

20. Upon default of the Rezko guaranty, Chaib's 20% ownership of Concessions automatically converted to Sirazi's ownership of such interest in Concessions. Said default occurred in January 2003.

21. In summary, as a result of the transactions detailed above, by November 17, 2003, Sirazi owned approximately 29% of Enterprises (the entity that wholly owned PE Chicago). By June 1, 2006, when Panda Express bought PE Chicago's interest in Rezko-Citadel, due to the interests he received from the Concessions' and Enterprises' warrants, and his prior interests, Sirazi had ownership interests of approximately 90% of Enterprises on a fully diluted basis and approximately 63% of Concessions on a fully diluted basis.

**The Rezko-Citadel Partnership**

22. Over the years the Rezko-Citadel partnership thrived and new Panda Express restaurants were opened. In or about July 2000, an independent auditor, Technomic, Inc.

("Technomic"), was engaged to determine the value of the Panda Express business that Rezko-Citadel held. Technomic calculated that the current value of Rezko-Citadel as of July 2000 was $42,220,710. Technomic concluded that by the end of 2001, the Rezko-Citadel partnership would be worth $56,392,170. As PE Chicago owned a 50% interest in Rezko-Citadel partnership, PE Chicago owned an interest worth $21,110,355 at the time of the audit, and $28,196,085 by the end of 2001. A copy of Technomic's July 2000 audit is attached hereto as Exhibit 8.

23. In addition to the independent valuation provided by Technomic, which valued PE Chicago's interest in Rezko-Citadel at $21,110,355 in 2000, Panda Express' own amendment to the partnership agreement put a value on PE Chicago's interest in Rezko-Citadel, in a distressed situation such as a foreclosure, of at least $13,863,050.80 in 2000. Accordingly, on September 26, 2000, the Rezko-Citadel partnership agreement was amended to grant Panda Express with a Put-Call option, which provided in relevant part:

> [U]pon the receipt by [Panda Express] of a notice form (sic) LaSalle Bank National Association, a national banking association ("Lasalle") that it is electing to foreclose, dispose of or take any other action with respect to any liens that it may have on the General Partner's General Partnership Interest in the Partnership, General Partner hereby grants to [Panda Express] the option to purchase the General Partner's entire General Partnership Interest in the Partnership for an amount equal to the sum of (a) Eight Million Dollars ($8,000,000.00) and (b) the then outstanding balance owed by General Partner to PANDA MANAGEMENT COMPANY, INC., a California corporation, under the Secured Promissory Note dated March 30, 1999, and most recently modified by that certain Secured Promissory Note Modification dated as of September 26, 2000.

See Ex. 9, which is a copy of the amendment to the Rezko-Citadel partnership agreement attached hereto. At the time of this amendment, PE Chicago owed Panda Express at least $5,863,050.80 in debt. Thus, as of September 26, 2000, Panda Express valued PE Chicago's

interest to be at least $13,863,050.80, which is the $8,000,000 payment plus the retirement of the $5,863,050.80 in debt that was owed to Panda Express.

24. As early as August 2000, Panda Express was aware that persons other than Tony Rezko had an interest in Enterprises, the entity that wholly owned and controlled Panda Express' partner, PE Chicago. Indeed, Panda Express was copied, on or had in its files, an August 15, 2000 letter from Jack Lavin (Chief Financial Officer of PE Chicago) to Mr. Gary Segal of Schwartz, Cooper, Greenberger & Kraus, an attorney representing LaSalle Bank in a financing transaction by LaSalle Bank and Rezko and various Rezko-controlled entities. This letter detailed the different members with interests Rezko Enterprises. A copy of Mr. Lavin's August 15, 2000 letter is attached hereto as Exhibit 10.

25. Panda Express was specifically aware of Sirazi's significant interest in Concessions and Enterprises and, on information and belief, had a copy of Sirazi's warrants agreements. Under a Loan and Security Agreement, dated September 26, 2000, between various Rezko-controlled entities and LaSalle Bank, among others, specific mention was made of Sirazi's August 29, 2000 loan to, and warrants agreements with, Enterprises and Concessions, as these documents were attached to the Loan and Security Agreement as exhibits. Furthermore, the Loan and Security Agreement documents and exhibits provide that Sirazi has an equity ownership interest and distribution rights in Enterprises and Concessions, and thus PE Chicago. A copy of certain excerpts of the September 26, 2000 Loan and Security Agreement is attached hereto as Exhibit 11. Panda had this Loan and Security Agreement, and, on information and belief, was aware of the relevant exhibits detailing Sirazi's interest in Enterprises and Concessions since 2000.

26. On another occasion Panda Express was made aware of others with interests and ownership of Concessions, Enterprises and PE Chicago. On March 29, 2001, LaSalle Bank sent a letter to Messrs. Lavin and Rezko notifying them of an Event of Default under a Loan Agreement that concerned Concessions, Enterprises, PE Chicago, PJ Chicago, East Coast PJ, PJ Canada, PJ Realty, Manufacturers Bank and LaSalle Bank National Association. A copy of the March 29, 2001 letter is attached hereto as Exhibit 12. This letter copied R. Michael Wilkinson, Esq., Panda Express' general counsel and Peggy Cherng, President and Chief Executive Officer of Panda Express, Inc. and, upon information and belief, an officer of the other Panda Express entities. This letter also copied Sirazi because of the interests he held in Concessions and Enterprises.

27. On June 3, 2001, the Rezko-Citadel partnership agreement was amended to provide for a detailed valuation process by independent third-parties if Panda Express exercised the Put-Call option[1] that it had under the agreement and the parties could not agree on a Fair Market Value as defined in the June 3, 2001 amendment. A copy of the June 3, 2001 amendment is attached hereto as Ex. 13.

**The Rezko-Citadel Partnership Agreement and Relationship**

28. On or about June 16, 2002, PE Chicago and Panda Express entered into an Amended and Restated Agreement of Limited Partnership. Pursuant to the Amended and Restated Agreement, the profits of the partnership were to be split 50-50 and, if a sale was ever to occur of a partnership interest, fair market value was to be defined as "the cash price that a willing buyer would pay to a willing seller when neither is acting under compulsion and when both have reasonable knowledge of the relevant facts as of the date of the Election Notice." A

---

[1] This option was separate and apart from the Put-Call option related to a default notice from LaSalle Bank.

copy of the June 16, 2002 Amended and Restated Agreement of Limited Partnership is attached hereto as Exhibit 14.

29. The partners intended for the partnership to develop and own and operate approximately 100 Panda Express stores and entered into the partnership agreement with that goal in mind. However, beginning on or about 2001, Panda Express began starving the partnership of capital that it needed for new store development. From 2002 through 2006, the partnership did not develop any new stores and Panda Express, outside the partnership, opened up many new stores in the Chicagoland area that should have been opened in the partnership. Although Rezko-Citadel had sufficient cash flow to open new stores, Panda Express, after becoming the General Partner, terminated the Line of Credit with LaSalle Bank and instead itself became the creditor of Rezko-Citadel. Panda Express improperly impeded Rezko-Citadel's ability to open new stores and negatively impacted the value of the partnership.

30. Panda Express further began placing improper debt burdens on PE Chicago by moving loans it made to Tony Rezko, personally and to his other related businesses, onto PE Chicago and the partnership. Panda Express charged its partner a usurious interest rate on these debts. Panda Express also engaged in improper accounting practices and did not distribute the partnership profits in a proper accounting, legal and corporate structure, and acted against PE Chicago's interest to benefit Panda Express and Tony Rezko personally and Tony Rezko's other businesses.

31. Before its dissolution by Panda Express, the partnership owned and operated approximately 50 Panda Express stores in the Chicagoland area, despite the fact that the parties had agreed and planned to develop approximately 100 stores. Furthermore, during the period from after Panda Express became the general partner of Rezko-Citadel in June 2002 through the

dissolution of the partnership, Panda Express opened and operated Panda Express stores at O'Hare International Airport and Illinois Tollway Oasis out-side of the Rezko-Citadel partnership.

**The "Sale" of PE Chicago's 50% Interest in the Rezko-Citadel Partnership**

32. Around late fall of 2005, it was widely reported that Tony Rezko and his business activities were under investigation by various governmental entities. Indeed, as early as March 2005, it was publicly reported that the City of Chicago's Department of Procurement Services was investigating and intended to shut down the Panda Express restaurants located in O'Hare Airport that the partnership managed. According to Panda Express' and PE Chicago's joint financial statements for Rezko-Citadel, these stores were allegedly owned by Crucial, Inc., a minority owned and operated business with which Rezko-Citadel had an "Operating Agreement" that provided Rezko-Citadel with management fees. According to these joint financial statements, Crucial, Inc. went out of business in 2005. Up to this point, Panda was aware that Rezko was personally receiving money directly from Crucial. These restaurants were designated as exclusively for minority-owned businesses and the federal and local authorities believed that the so-called minority representative was merely a front for Tony Rezko. Succinctly put, at this time it was widely known that Rezko was in severe financial distress and had extensive legal troubles.

33. In or around March or April of 2006, Dr. Fortunee Massuda contacted Panda Express and informed Panda Express that she was suing Tony Rezko and the business entities that he controlled for monies owed to her. She inquired whether Panda Express had an interest in buying her stake in Enterprises (and thus PE Chicago). R. Michael Wilkinson, Panda Express'

General Counsel, told Dr. Massuda that Panda Express was not interested and that her interest in Enterprises and PE Chicago was worthless.

34. In mid-May 2006, Rezko contacted Wilkinson to request an urgent loan for approximately $3,000,000. Rezko informed Wilkinson that he needed the loan because GE Capital was about to take drastic and immediate action and foreclose on Rezko's home. Wilkinson presented this request to Panda Express' Board of Directors and was informed that no loan would be made. When Wilkinson informed Rezko of this fact, Rezko instead offered to sell PE Chicago's interest in the Rezko-Citadel partnership to Panda Express. In or about late May of 2006, Mr. Larry Behm, one of Panda Express' directors, convinced Andrew Cherng to buy out Rezko and have PE Chicago's interest transferred to Panda Express.

35. Panda Express purchased PE Chicago's interest in the Rezko-Citadel partnership on June 1, 2006. See Ex. 15, which is a copy of the original sale and purchase agreement attached hereto. As the purchase agreement states, Rezko-Citadel was an Illinois limited partnership, owned one half by Panda Express and one half by PE Chicago. Despite the requirements of the partnership agreement, Panda Express did not send PE Chicago a "Put-Call" notice. The purchase agreement was drafted entirely by Panda Express' attorney, Defendant R. Michael Wilkinson. Neither Tony Rezko nor PE Chicago had representation with regard to the transaction. Indeed, Tony Rezko's lack of representation was detailed in a paragraph of the purchase and sale agreement. Ex. 15 at ¶ 12. Even though Sirazi had a substantial interest at the time of the transaction – Sirazi's ownership interests were about 90% of Enterprises (on a fully diluted basis) and 63% of Concessions – Sirazi did not receive any notice of the transaction. At no time was Sirazi ever notified of the pending transaction, let alone was he made aware of any

of the details of said sale transaction, despite the fact that he had ownership interests of a controlling interest in PE Chicago, the 50% partner of Rezko-Citadel.

36. R. Michael Wilkinson, Andrew Cherng and Peggy Cherng were aware that Rezko was desperate for funds and supposedly needed at least $3,000,000 to prevent an immediate foreclosure on his personal residence. This is almost the exact amount that Messrs. Wilkinson and Cherng, and Ms. Cherng authorized Panda Express to wire to Rezko's personal account pursuant to the "sale" of PE Chicago's interest in the Rezko-Citadel partnership. Messrs. Wilkinson and Cherng, and Ms. Cherng, were aware that Rezko was under investigation by various governmental authorities, that certain of Rezko's business ventures had filed for bankruptcy, and that Rezko was under severe financial and legal stress. Indeed, Messrs. Wilkinson and Cherng, and Ms. Cherng were aware that Panda Express was under subpoena with regard to at least one such investigation of Rezko's activities.

37. Messrs. Wilkinson and Cherng, and Ms. Cherng, were specifically aware that other investors, such as Sirazi, had significant interests in certain Rezko businesses that owned PE Chicago, Panda Express' partner. Despite this fact, Messrs. Wilkinson and Cherng, and Ms. Cherng, agreed to Rezko's demand that the sale of PE Chicago's interest be kept secret and actively concealed the sale from parties, such as Sirazi, that had significant interests in PE Chicago. Messrs. Wilkinson and Cherng, and Ms. Cherng were aware that the sale of PE Chicago's interest was for much less than fair value due to Rezko's dire need for funds and his other extenuating circumstances. Messrs. Wilkinson and Cherng, and Ms. Cherng, specifically denied Rezko's request for a loan for the purpose of forcing a fire sale of PE Chicago's interest in the partnership because the individual defendants were aware that Rezko had no other source of funds and therefore would have to accept whatever price the Defendants would offer Rezko

for PE Chicago's interest. Messrs. Wilkinson and Cherng, and Ms. Cherng, paid off Rezko personally and cheated and defrauded PE Chicago, and those with significant interests in PE Chicago, out of the fair value of PE Chicago's interest in the Rezko-Citadel partnership. The individual defendants have significant interests in Panda Express and thereby directly benefited from this transaction.

38. Although Panda Express was aware that other parties – and specifically Sirazi – had significant interests in Enterprises (and thus PE Chicago), at no time did Sirazi or any other party receive any notice about the proposed sale of PE Chicago's interest in Rezko-Citadel to Panda Express. Upon information and belief, Panda Express and its counsel informed no one, and dealt with no one, other than Tony Rezko regarding the proposed transaction. Indeed, PE Chicago is not even referred to by name in the body of the agreement, even though it is the entity that had a 50% interest in Rezko-Citadel.

39. In the original agreement of purchase and sale, the purchase price for PE Chicago's interest in Rezko-Citadel was set at $9,764,228.00. Of this amount, Panda Express wired $3,252,150.00 to Tony Rezko's personal account at Broadway Bank on June 2, 2006. A copy of the June 2, 2006 wire transfer is attached hereto as Exhibit 16. A communication discussing this wire was sent from R. Michael Wilkinson, Panda Express' general counsel, to John Theuer, Dan Sheehy and Peggy Cherng, all officers of Panda Express. This communication instructed: "DO NOT FUND UNTIL WE HAVE CONFIRMATION THAT REZKO ENTERPRISES, LLC IS QUALIFIED TO DO BUSINESS IN ILLINOIS." Ex. 17. $4,687,078.00 of the purchase price was held back to repay the debt owed to Panda Express. The remaining $1,825,000 balance was to be paid:

> to REZKO, as directed by Antoin Rezko from time to time, to the extent that MB Financial's security interest in REZKO-CITADEL

> is less than One Million Eight Hundred Twenty-five Thousand and no/100 Dollars ($1,825,000.00).

Ex. 15 at ¶ 5. At this time, MB Financial's security interest in the partnership equaled $1,825,000 and Panda Express was aware of this fact. This agreement also allowed Rezko, or any entity he controlled, a limited option to repurchase PE Chicago's interest in Rezko-Citadel for the purchase price, increased by a time-price factor equal to 10% per annum, compounded annually. This option had to be exercised by July 31, 2007 and had to be a lump-sum payment to Panda Express. Panda Express also retained the right to accelerate the July 31, 2007 deadline, if:

> PANDA determines, in is (sic) reasonable business discretion, that continuation of the option to July 31, 2007 would restrict or impair PANDA's ability to borrow funds or raise capital or otherwise likely cause PANDA material business problems or cost, the explanation of which would be certified in a writing from the Chief Financial Officer of Panda Restaurant Group, Inc. to Antoin Rezko.

Ex. 15 at ¶ 6.

40. The original purchase agreement was subsequently amended, however, because Dan Sheehy, a controller for one or more of the Panda Express entities, stated that he had made an error calculating how much Tony Rezko owed Panda Express. According to Mr. Sheehy, Tony Rezko owed Panda Express, $6,010,284 and not $4,687,078. A copy of an email from Mr. Sheehy documenting this fact is attached hereto as Ex. 18. The amended purchase agreement now stated that the total purchase price for PE Chicago's interest in Rezko-Citadel was $10,322,737.00. A copy of the amended purchase and sale agreement is attached hereto as Ex. 19. The amount personally given to Tony Rezko did not change. The amount of debt retired was changed to $6,010,284. Id. Also, the remaining balance due was reduced from $1,825,000 to $1,064,167. Id. Apparently Tony Rezko had no objection to this reduction in monies, as Panda Express' counsel stated to Panda Express' CFO in an email: "John, Tony readily agreed

to your analysis, even if the approach is slightly different from HL's approach. I'm delighted." See Ex. 20. Panda Express wired $1,064,167 to Enterprises' account at MB Financial on June 20, 2006. See Ex. 21. These monies were automatically applied to reduce MB Financial's security interest in the partnership. After this transaction, MB Financial had a security interest of $760,833 and Panda Express was aware of this fact. Money was never transferred to a PE Chicago account, the entity with the actual interest in Rezko-Citadel, with regard to this entire transaction.

41. On November 2, 2006, after Tony Rezko's indictment by a federal grand jury on various charges, Panda Express sent Mr. Rezko a letter to his home address certifying that Panda Express was accelerating Rezko's option to repurchase PE Chicago's 50% interest in the Rezko-Citadel partnership, and that said option had to be exercised by December 20, 2006. A copy of this November 2, 2006 letter is attached hereto as Exhibit 22. Panda Express stated: "We understand that you will need time to discuss this with your attorneys, and that you may not be in a position to voluntarily relinquish the right to repurchase the 50% limited partnership interest in Rezko-Citadel." Id. Again, Sirazi was not informed of this acceleration by Panda Express. Rezko never exercised PE Chicago's right to repurchase PE Chicago's partnership interest in Rezko-Citadel.

## FRAUDULENT CONCEALMENT

42. Defendants affirmatively concealed from the Plaintiffs the wrongful actions described in this First Amended Complaint.

43. Defendants had a duty to inform Plaintiffs of the ongoing and wrongful actions described herein and actively conspired with Rezko to conceal their wrongful actions in order to enrich themselves and harm Plaintiffs.

44. Despite exercising reasonable due diligence, Plaintiffs could not have discovered these wrongful actions prior to the instigation of this lawsuit. Consequently, the statute of limitations has been tolled with respect to any claims that Plaintiffs have brought or could have been brought as a result of the unlawful and fraudulent course of conduct described herein.

45. Defendants are further estopped from asserting any statute of limitations defense, contractual or otherwise, to the claims herein by virtue of their acts of fraudulent concealment.

**COUNT I – UNJUST ENRICHMENT**
**(Against Corporate Defendants)**

46. Plaintiffs reassert and incorporate by reference the allegations of their First Amended Complaint at paragraphs 1 through 45 as if fully set forth herein.

47. Plaintiff PE Chicago pleads this Count expressly in the alternative to Count VII.

48. Panda Express took advantage of the circumstances that Tony Rezko was in with regard to his distressed financial situation and extensive legal troubles to purchase PE Chicago's interest in Rezko-Citadel at a price well below its fair value. Indeed, PE Chicago's interests were not represented by any independent auditor and PE Chicago lacked any legal representation with regard to this complex transaction. Even though Panda Express knew that others – specifically Sirazi – had significant interests in Enterprises and PE Chicago, Panda Express paid Rezko personally (in a personal account) for the purchase, failed to follow proper corporate practice, and dealt only with Rezko with regard to this transaction, among other improper actions. By doing so, Panda unjustly deprived and cheated Plaintiffs out of the true and proper value of PE Chicago's 50% interest in Rezko-Citadel. Panda Express further cheated PE Chicago out of its right and ability to develop new stores in accordance with the parties' understanding and thus unjustly enriched itself at PE Chicago's expense.

49. Sirazi and PE Chicago fulfilled any and all obligations or duties they may have had.

50. Panda Express unjustly received the benefit of a price well below fair market value to acquire PE Chicago's 50% interest in the Rezko-Citadel partnership.

51. Panda Express has been unjustly enriched.

52. It would violate the principles of justice, equity and good conscience for Panda Express to retain this benefit.

53. To avoid an unjust enrichment, Plaintiffs should be awarded damages reflecting Panda Express' enrichment, among other relief. In the alternative, the June 1, 2006 sale transaction should be unwound and PE Chicago should retain its 50% interest in the Rezko-Citadel partnership.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Panda Express in an amount to be determined at trial, but not less than $40,000,000.00; or, in the alternative, that the Court unwind the sale of PE Chicago's 50% interest in Rezko-Citadel, as well as award Plaintiffs interest, costs and attorney fees, and all such other relief as the Court may deem just, equitable, or appropriate under the circumstances.

**COUNT II – FRAUD**
**(Against All Defendants)**

54. Plaintiffs reassert and incorporate by reference the allegations of their First Amended Complaint at paragraphs 1 through 45 as if fully set forth herein.

55. Plaintiffs allege that Defendants intentionally defrauded Sirazi, PE Chicago and Enterprises out of the fair market value of PE Chicago's 50% interest in the Rezko-Citadel partnership.

56. The Defendants specifically were aware of Sirazi's and other third-party interests in Enterprises and PE Chicago. Defendants had knowledge that Tony Rezko was being investigated by several different governmental entities, that Rezko was suffering from severe legal and financial distress, and that Rezko was desperate for funds. The Defendants and Tony Rezko entered into a scheme to defraud Sirazi, PE Chicago and Enterprises and others with interests in PE Chicago and Enterprises. This scheme entailed Panda Express paying Tony Rezko personally for PE Chicago's 50% interest in Rezko-Citadel, instead of PE Chicago. In return, Rezko caused PE Chicago to transfer its 50% interest to Panda Express at a price that was well below fair value. Individual defendants R. Michael Wilkinson, Andrew Cherng and Peggy Cherng facilitated all aspects of this fraud against Sirazi, PE Chicago and Enterprises and were each personally involved in this fraudulent scheme and transaction and approved the same.

57. As further examples of the Defendants' fraudulent actions, on June 1, 2006, Panda Express purchased PE Chicago's interest in the Rezko-Citadel partnership at a price well below fair value. Panda Express paid a portion of the monies from the purchase price directly to Tony Rezko, in his personal account. No independent party represented PE Chicago's interests in the transaction, and Rezko had no independent representation.

58. The Defendants falsely and misleadingly represented that the purchase price it offered for PE Chicago's 50% interest in Rezko-Citadel represented a fair value. A specific example of this misrepresentation is found in the agreement of purchase and sale on June 1, 2006, where Panda Express states, "for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged..." See Ex. 15. The transaction was not for fair value, and the Defendants were aware of that fact.

59. Defendants also made material omissions by failing to inform any of the third-parties (including Sirazi) with interests in PE Chicago and Enterprises of the transaction, even though the Defendants had specific knowledge these parties' interests. The Defendants concealed this transaction from said parties, preventing any sort of independent evaluation of the fair value of PE Chicago's interest in the Rezko-Citadel partnership at the time of the transaction.

60. Defendants made these materially false and misleading statements and omissions with the intent of concealing its fraudulent actions from Sirazi, PE Chicago and others.

61. By making these material false and misleading statements and material omissions, Defendants acted with reckless indifference and with willful and wanton disregard to PE Chicago's and Enterprises' interests and the parties with interests in PE Chicago and Enterprises, such as Sirazi. Specifically, Defendants concealed this transaction and colluded with Tony Rezko to accomplish the sale of PE Chicago's interest in Rezko-Citadel at a price well below fair value. An award of exemplary damages based on Defendants' fraudulent actions is appropriate because the fraud involved the partnership relationship that Panda Express had with PE Chicago and caused Tony Rezko to violate his duties and responsibilities to PE Chicago and Enterprises, and those who had interests in those entities.

62. By making these false and misleading statements and material omissions and concealments, Defendants intended to cause PE Chicago, through its agent Tony Rezko, all who were acting against PE Chicago's interests, to transfer its 50% interest in Rezko-Citadel to Panda Express for a price that was well below fair value.

63. As a direct and proximate result of Defendants' material omissions, Plaintiffs have suffered damages in an amount to be determined at trial, but which are not less than $15,000,000.00.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Defendants in an amount to be determined at trial, but not less than $15,000,000.00, as well as for exemplary damages, as well as interest, costs and attorney fees, and all such other relief as the Court may deem just, equitable, or appropriate under the circumstances.

**<u>COUNT III –CONSPIRACY TO DEFRAUD</u>**
**(Against All Defendants)**

64. Plaintiffs reassert and incorporate by reference the allegations of their First Amended Complaint at paragraphs 1 through 45 as if fully set forth herein.

65. At a time specifically unknown to Plaintiffs, but on information and belief around May-June of 2006, Defendants and Tony Rezko entered into an agreement and conspiracy to defraud PE Chicago and Enterprises, and those with interests in PE Chicago and Enterprises, of the fair value of their interest in the Rezko-Citadel partnership.

66. Defendants and Tony Rezko agreed to perform each of the above-detailed overt acts in furtherance of their agreement and conspiracy to defraud PE Chicago and Enterprises, and those with interests in PE Chicago and Enterprises, including, but not limited to, paying Tony Rezko personally for causing PE Chicago to transfer its interest in the Rezko-Citadel partnership to Panda Express for a price that was well below the fair value of said interest.

67. By their agreement and conspiracy, Defendants and Tony Rezko have unlawfully and fraudulently caused PE Chicago to transfer its 50% interest in the Rezko-Citadel partnership to Panda Express at a price that was well below fair value, to the detriment of PE Chicago and Enterprises and those who have interests in PE Chicago and Enterprises.

68. By entering into an agreement and conspiracy to defraud PE Chicago and Enterprises and those with interests in PE Chicago and Enterprises, Defendants acted with reckless indifference and with willful and wanton disregard to PE Chicago's and Enterprises'

interests and the parties with interests in PE Chicago and Enterprises, such as Sirazi. Specifically, Defendants concealed this transaction and colluded with Tony Rezko to accomplish the sale of PE Chicago's interest in Rezko-Citadel at a price well below fair value. An award of exemplary damages based on Defendants' fraudulent conduct is appropriate because the fraud involved the partnership relationship that Panda Express had with PE Chicago and caused Tony Rezko to violate his duties and responsibilities to PE Chicago and Enterprises, and those who had interests in those entities.

69. Each of the schemes and devices of the foregoing paragraphs comprises one or more overt acts by Defendants and Tony Rezko in the design, pursuit and execution of their conspiracy and agreement to defraud PE Chicago and Enterprises, and those with an interest in PE Chicago and Enterprises, of the fair value of PE Chicago's interest in the Rezko-Citadel partnership.

70. As a direct and proximate result of the agreement and conspiracy between Defendants and Tony Rezko to defraud PE Chicago and Enterprises and those with interests in PE Chicago and Enterprises, Plaintiffs have suffered damages in an amount to be determined at trial, but not less than $15,000,000.00.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Defendants in an amount to be determined at trial, but not less than $15,000,000.00, as well as for exemplary damages, interest, costs and attorney fees, and all such other relief as the Court may deem just, equitable, or appropriate under the circumstances.

## COUNT IV – AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY
## (Against Corporate Defendants)

71. Plaintiffs reassert and incorporate by reference the allegations of their First Amended Complaint at paragraphs 1 through 45 as if fully set forth herein.

72. At all times relevant to this First Amended Complaint, Tony Rezko and Al Chaib were directors and officers of PE Chicago and Enterprises.

73. As directors and officers of PE Chicago and Enterprises, Tony Rezko and Al Chaib owed a fiduciary duty of loyalty to shareholders and creditors of PE Chicago and Enterprises, including Sirazi.

74. As directors and officers of PE Chicago and Enterprises, Tony Rezko and Al Chaib owed a fiduciary duty obligation to act with due care and to deal honestly and fairly with PE Chicago and the shareholders and creditors of PE Chicago and Enterprises, including Sirazi.

75. Tony Rezko and Al Chaib breached their fiduciary duties to PE Chicago's and Enterprises' shareholders and creditors, including Sirazi, by allegedly authorizing the transfer of PE Chicago's 50% interest in Rezko-Citadel to Panda Express for a price that was well below fair value and by taking other actions to the benefit of themselves and to the prejudice and detriment of the shareholders and creditors of PE Chicago and Enterprises.

76. Defendants were aware, or should have been aware, of Tony Rezko's and Al Chaib's fiduciary duties and obligations to shareholders and creditors of PE Chicago and Enterprises.

77. Defendants knowingly participated, assisted in, and benefited from, Tony Rezko's and Al Chaib's breaches of their fiduciary duties.

78. Plaintiffs have been damaged as a direct and proximate result of each of Defendants' aiding and abetting Tony Rezko's and Al Chaib's breaches of their fiduciary duties.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Panda Express in an amount to be determined at trial, but not less than $40,000,000.00,

as well as for interest, costs and attorney fees, and all such other relief as the Court may deem just, equitable, or appropriate under the circumstances.

**COUNT V – VIOLATION OF ILLINOIS**
**UNIFORM FRAUDULENT TRANSFER ACT – ACTUAL FRAUD**
**(Against Corporate Defendants)**

79. Plaintiffs reassert and incorporate by reference the allegations of their First Amended Complaint at paragraphs 1 through 45 as if fully set forth herein.

80. The transfer of PE Chicago's 50% interest in Rezko-Citadel was made with the actual intent to delay, hinder, and/or defraud PE Chicago and PE Chicago's and Enterprises' creditors, including Sirazi.

81. Plaintiffs bring this claim pursuant to the Illinois Uniform Fraudulent Transfer Act.

82. At all relevant times, Enterprises (the entity that wholly owned and controlled PE Chicago) was a debtor within the meaning of 740 ILCS 160/2 (c), (f) and (i).

83. From August 29, 2000 to the time when PE Chicago's interest in Rezko-Citadel was purchased by Panda Express, Sirazi was a "creditor" of Enterprises within the meaning of 740 ILCS 160/2 (c), (d) and (i).

84. Panda Express' purchase of PE Chicago's 50% interest in the Rezko-Citadel partnership was a transfer within the meaning of 740 ILCS 160/2(l).

85. In causing Tony Rezko and Enterprises to transfer PE Chicago's interest in the Rezko-Citadel partnership (the only real asset held by PE Chicago), Panda Express acted with actual intent to hinder, delay or defraud creditors of Enterprises and PE Chicago, namely Sirazi, within the meaning of 740 ILCS 160/5(a)(1).

86. Among other things, the following factors demonstrate Panda Express' fraudulent intent at the time of the transfer of PE Chicago's interest within the meaning of 740 ILCS 160/5:

(a) Panda Express knew that Tony Rezko was under severe financial distress and was desperate for funds, which allowed Panda Express to induce and cause Rezko (an insider of PE Chicago and Enterprises within the meaning of 740 ILCS 160/2 (g)(D)) to transfer PE Chicago's interest in the Rezko-Citadel partnership to Panda Express for well below its fair market value;

(b) Panda Express paid Tony Rezko in a personal account instead of paying PE Chicago, the entity that actually owned the 50% interest in the partnership;

(c) Neither Rezko nor PE Chicago was represented by counsel or any other independent third-party;

(d) On information and belief, no qualified, independent third-party was retained to provide an estimation of the value of PE Chicago's 50% interest in Rezko-Citadel; and

(e) Other relevant factors according to proof.

87. Panda Express received the benefit of the transfer of PE Chicago's 50% interest in Rezko-Citadel in bad faith. In particular, Panda Express knew that it paid well below fair value for PE Chicago's interest in the partnership and that Tony Rezko desperately needed the funds. Panda Express knew that Tony Rezko and his affiliated businesses were continuing to be the subject of civil and criminal investigations by both governmental entities and private parties. Panda Express also knew that creditors, such as Sirazi, had significant claims against Enterprises. Panda Express caused, enticed and induced Rezko and Enterprises to transfer PE Chicago's 50% interest in the Rezko-Citadel partnership to Panda Express with actual intent to hinder, delay, or defraud creditors of Enterprises, such as Sirazi.

88. PE Chicago did not receive a reasonably equivalent value, within the meaning of 740 ILCS 160/4, in exchange for the transfer of its partnership interest to Panda Express.

WHEREFORE, Plaintiffs respectfully request that the Court enter an Order avoiding the transfer of PE Chicago's interest in Rezko-Citadel to Panda Express, award the cash value of the interest transferred based on its fair value for the benefit of Enterprises' and PE Chicago's creditors, such as Sirazi, and/or any other relief contemplated under 740 ILCS 160/8, and enter judgment against Panda Express, as well as award Plaintiffs' interest, costs and attorney fees, and all such other relief as the Court may deem just, equitable, or appropriate under the circumstances.

**COUNT VI – VIOLATION OF ILLINOIS**
**UNIFORM FRAUDULENT TRANSFER ACT – CONSTRUCTIVE FRAUD**
**(Against Corporate Defendants)**

89. Plaintiffs reassert and incorporate by reference the allegations of their First Amended Complaint at paragraphs 1 through 45 as if fully set forth herein.

90. Plaintiffs bring this claim pursuant to the Illinois Uniform Fraudulent Transfer Act.

91. At all relevant times, Enterprises (the entity that wholly owned and controlled PE Chicago) was a debtor within the meaning of 740 ILCS 160/2 (c), (f) and (i).

92. From August 29, 2000 to the time when PE Chicago's interest in Rezko-Citadel was purchased by Panda Express, Sirazi was a "creditor" of Enterprises within the meaning of 740 ILCS 160/2 (c), (d) and (i).

93. Panda Express' purchase of PE Chicago's 50% interest in the Rezko-Citadel partnership was a transfer within the meaning of 740 ILCS 160/2(l).

94. Panda Express did not provide PE Chicago or Enterprises with a reasonably equivalent value, as defined in 740 ILCS 160/4(a), in exchange for the transfer of PE Chicago's 50% interest in the Rezko-Citadel partnership.

95. At the time of the transfer, Enterprises was engaged in a business (and/or transactions) for which its remaining assets were unreasonably small in relation to the business (and/or transactions). In addition, Enterprises intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

WHEREFORE, Plaintiffs respectfully request that the Court enter an Order avoiding the transfer of PE Chicago's in Rezko-Citadel to Panda Express, award the cash value of the interest transferred based on its fair value for the benefit of Enterprises' and PE Chicago's creditors, such as Sirazi, and/or any other relief contemplated under 740 ILCS 160/8, and enter judgment against Panda Express, as well as award Plaintiffs interest, costs and attorney fees, and all such other relief as the Court may deem just, equitable, or appropriate under the circumstances.

**COUNT VII – BREACH OF CONTRACT**
**(PE Chicago Against Corporate Defendants)**

96. PE Chicago reasserts and incorporates by reference the allegations of its First Amended Complaint at paragraphs 1 through 45 as if fully set forth herein.

97. PE Chicago pleads this Count in the alternative to its unjust enrichment count.

98. On or about June 16, 2002, Panda Express and PE Chicago entered into an Amended and Restated Agreement of Limited Partnership. This agreement is a legally enforceable contract between the parties upon proper consideration, whereby the parties were mutually obligated to one another and there was a mutuality of agreement, and the parties were competent to enter such a contract.

99. PE Chicago performed its obligations under the parties' contract.

100. Panda Express breached the contract by: a) failing to distribute the profits on a 50-50 basis; b) failing to properly assign a fair market value of a partnership interest; and c) other breaches according to proof.

101. Panda Express further breached the parties' covenant of good faith and fair dealing under the contract implied by law by engaging in the breaches of the parties' agreement described above.

102. As a direct and proximate consequence of Panda Express' breaches of the parties' agreements, PE Chicago has suffered actual damages in an amount to be proven at trial, but which are not less than $40,000,000.00.

WHEREFORE, PE Chicago respectfully requests that the Court enter judgment against Panda Express in an amount to be determined at trial, but not less than $40,000,000.00, as well as for interest, costs and attorney fees, and all such other relief as the Court may deem just, equitable, or appropriate under the circumstances.

**COUNT VIII – BREACH OF FIDUCIARY DUTY**
**(PE Chicago Against Corporate Defendants)**

103. PE Chicago reasserts and incorporates by reference the allegations of its First Amended Complaint at paragraphs 1 through 45 as if fully set forth herein.

104. Panda Express was the partner of PE Chicago in the Rezko-Citadel partnership, and owed fiduciary duties of loyalty, honesty and fair dealing, among other fiduciary duties, to PE Chicago.

105. Panda Express breached their fiduciary duties owed to PE Chicago by acting only in the interests of Panda Express in Tony Rezko with regard to the operation of the partnership and the fraudulent sale of PE Chicago's interest in the partnership, contrary to the interests of PE Chicago. For example, Panda Express conspired with Tony Rezko to purchase PE Chicago's

partnership interest at a fire sale price due to Tony Rezko's personal legal and financial troubles. Panda Express also starved the partnership of capital and did not open the planned number of stores and, instead, opened these stores in furtherance of their own interests in derogation to the interests of PE Chicago.

106. As detailed in the allegations of this First Amended Complaint, Panda Express has acted intentionally and knowingly, or, in the alternative, wantonly and recklessly, or, in the alternative, negligently against PE Chicago's interests in direct violation of Panda Express' fiduciary duties owed to PE Chicago.

107. As a direct and proximate result of Panda Express' breach of their fiduciary duties owed to PE Chicago, PE Chicago has suffered, and continues to suffer, damages in an amount to be determined at trial, but which are not less than $40,000,000.00.

WHEREFORE, PE Chicago respectfully requests that the Court enter judgment against Panda Express in an amount to be determined at trial, but not less than $40,000,000.00, as well as for interest, costs and attorney fees, and all such other relief as the Court may deem just, equitable, or appropriate under the circumstances.

**JURY TRIAL DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

SEMIR D. SIRAZI and PE CHICAGO, LLC

Dated: July 22, 2010

By: /s/ Robert S. Grabemann
One of Their Attorneys

Robert S. Grabemann
Timothy M. Schaum
DASPIN & AUMENT, LLP
227 West Monroe
Suite 3500
Chicago, Illinois 60606
(312)258-1600

Gregory J. Scandaglia
Seth R. Yohalem
SCANDAGLIA & RYAN
55 E. Monroe Street, Suite 3440
Chicago, Illinois 60603

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that he caused a copy of the foregoing FIRST AMENDED COMPLAINT via electronic filing, on or about the 22nd day of July, 2010 on:

Joseph R. Marconi
Michael P. Siavelis
Justin Volmert
Katherine J. Pronk
Johnson & Bell, Ltd.
33 West Monroe Street
Suite 2700
Chicago, Illinois 60603
(312) 372-0770

/s/ Robert S. Grabemann
Robert S. Grabemann